O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **NADYA REYES DE PEREZ,** *et. al.*, § | |
| *Plaintiffs*, § | |
| § | CIVIL ACTION NO. 5:06-cv-02 |
| v. § | |
| § | |
| **CONTRACT FREIGHTERS, INC.,** § | |
| *Defendant*. § | |

## OPINION & ORDER

Pending before the Court is Defendant's Motion to Transfer Venue to the Northern District of Texas. [Dkt. No. 7]. After due consideration of the pleadings, and the governing law, the Court GRANTS Defendant's Motion.

### I.  PROCEDURAL HISTORY AND RELEVANT FACTS

On January 3, 2005, Gamaliel Feliciano Perez and Eduardo Guzman-Avila were killed on Interstate 30, in Hunt County, Texas, after they were struck by a tractor-trailer driven by Defendant's employee. [Dkt. No. 7, ¶¶ 2-3]. This suit arises out of that accident. Plaintiffs, who are relatives of decedents, bring this suit individually, and on behalf of decedents and the heirs to decedents' respective estates. [Dkt. No. 1 at 1-2]. Specifically, Plaintiffs assert the claims of negligence and negligence per se. [Dkt. No. 4-5].

Plaintiffs are residents of Mexico, as are several of their eyewitnesses. [Dkt. No. 10, ¶¶ 26-39]. Thus, at least ostensibly, the motivation of Plaintiffs in filing this suit in the Southern District of Texas, rather than in the district in which the accident occurred, is the relative proximity of the Laredo Division to Plaintiffs and their witnesses. [Dkt. No. 10, ¶ 21]. On March 10, 2006, Defendant filed the Motion to Transfer now before the Court, arguing that

the Northern District is the proper venue for this controversy under 28 U.S.C. § 1404(a), as interpreted in controlling caselaw. [Dkt. No. 7]. Plaintiffs naturally disagree, and filed their Response on March 30, 2006. [Dkt. No. 10].

## II.    DISCUSSION

Section 1404(a), provides that "[f]or the convenience of parties and witnesses, [and/or] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant argues that § 1404(a) is satisfied here because this suit "has no connection to the Southern District of Texas" since "[t]he accident . . . occurred in Hunt County, Texas located in the Northern District of Texas, Dallas Division . . . ." [Dkt. No. 7, ¶ 6].

Section 1404(a) places "discretion in district courts to adjudicate motions for transfer according to individualized, case-by-case considerations of convenience and fairness . . . ." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A party moving to transfer venue bears the burden of demonstrating that such transfer is warranted. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Brown v. Petroleum Helicopters, Inc.*, 347 F. Supp. 2d 370, 372 (S.D. Tex 2004).

The specific factors controlling the propriety of transfer were enumerated by the Fifth Circuit in *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Per the plain language of § 1404(a), the threshold inquiry for the Court is whether the venue to which the movant seeks transfer is one in which the suit may have been filed originally. *Id.* If the action could have originally been brought in the alternative venue, a reviewing court then considers a number of

private and public interest factors, none of which are given dispositive weight. *Id.* As enumerated by the Fifth Circuit, the private factors include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.*

The public concerns include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.*

The Court will address each of these considerations in turn.

### A. The Northern District of Texas as a Proper Original Forum

According to 28 U.S.C. § 1391(a)(2), a diversity suit may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Plaintiffs do not deny that the accident at issue here took place within the geographical boundaries defining the Northern District of Texas. [Dkt. No. 7, ¶ 6]. Accordingly, there is no dispute between the parties as to whether Plaintiffs could have originally brought this suit in that venue.

### B. Deference to Plaintiffs' Choice of Forum

Before delving into each of the private and public prongs listed above, it is worth noting that Plaintiffs' choice to pursue their claims in the Southern District commands some deference. However, there is much uncertainty as to the *extent* to which a plaintiff's choice of original forum governs disposition of transfer motions brought under § 1404(a). In other

3

words, it is not perfectly clear how strongly the private and public considerations, taken together, must counsel in favor of transfer in order to overcome the traditional assumption that a plaintiff's venue selection should not be disturbed. As one court has noted, "[c]ourts have developed a bewildering variety of formulations on how much weight is to be given to [a] plaintiff's choice of forum." *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 656 (E.D. Tex. 1998) (quoting 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *Federal Practice and Procedure* § 3848 (1986)).

Plaintiffs quote the Fifth Circuit's opinion in *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987), in stating that courts must entertain "a strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." [Dkt. No. 10 at 7]. However, this quotation of *Schexnider* is not persuasive. The Fifth Circuit made this statement in the context of reviewing a district court's decision to dismiss the respective suit on *forum non conveniens* grounds, not on a decision to transfer venue under § 1404(a). *Id.* at 1163. However, Plaintiffs also cite *Kaimichi R.R.*, 42 F. Supp. 2d at 656, in which a district court relied on the above language from *Schexnider* in ruling on a § 1404(a) motion. [Dkt. No. 10, ¶11]. Indeed, given the similarity between the *forum non conveniens* and § 1404(a) frameworks, some district courts seemed to have conflated the two, and have assumed that the "strong presumption" of the type articulated in *Schexnider* governs disposition of § 1404(a) matters. *See*, *e.g.*, *S&W Enters., L.L.C. v. SouthTrust Bank, N.A.*, 2000 U.S. Dist. LEXIS 22411 (N.D. Tex. 2000) (citing *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, (1947)); *Tinkers & Chance v. Leapfrog Enters.*, 2006 U.S. Dist. LEXIS 10115 (E.D. Tex. 2006). These opinions are obviously in tension with, for example, the Eastern District of

4

Texas' opinion in *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998), where the court, in ruling on a § 1404(a) motion, rejected the invocation of caselaw calling for "great deference" to the plaintiff's choice of forum, because the cited case "was a *forum non conveniens* case." For reasons explained below, this Court agrees with the Eastern District's suggestion in *Reed* that opinions deferring to a plaintiff's choice of forum in the *forum non conveniens* context are not on point in determining whether to transfer a case under § 1404(a).

In stating that courts should entertain a "strong presumption in favor of a plaintiff's choice of forum," the *Schexnider* court was actually quoting the Supreme Court's opinion in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). The Fifth Circuit's reliance on this language makes sense, as *Piper Aircraft*, like *Schexnider*, dealt with *forum non conveniens*, not with § 1404(a) transfer. In fact, the Supreme Court in *Piper Aircraft* reversed the lower court due to the latter erroneously analogizing *forum non conveniens* analysis to principles governing transfer under § 1404(a). *See id.* at 253. This is because in enacting § 1404(a) Congress "intended to do more than just codify the existing law on *forum non conveniens*." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Therefore, § 1404(a) transfers may be granted "upon a lesser showing of inconvenience" than would be required under *forum non conveniens* principles. *Id.* The *Norwood* Court went on to clarify, stating "[t]his is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *Id. See also Piper Aircraft*, 454 U.S. at 253 ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*."); *Ex parte Chas. Pfizer & Co.*, 225 F.2d 720, 721-22 (5th Cir. 1955).

Since greater "discretion in transferring venue" necessarily means correspondingly less deference to a plaintiff's choice of forum, most courts agree that "[w]hile the doctrine of *forum non conveniens* gives great weight to [a] plaintiff's choice of forum, [the] plaintiff's choice weighs less heavily in [a] transfer determination under 28 U.S.C.[] § 1404(a)." *Letter-Rite, Inc. v. Computer Talk, Inc.*, 605 F. Supp. 717, 720 (N.D. Ill. 1985). *See also Reed*, 995 F. Supp. at 714 ("[T]he deference given to a plaintiff's choice of forum is greater in a *forum non conveniens* transfer than it is in a § 1404(a) transfer."); *All States Freight, Inc. v Modarelli*, 196 F.2d 1010, 1011 (3d Cir. 1952) (stating that the text of § 1404(a) "should be considered for what [it] say[s,] not with preconceived limitations derived from the *forum non conveniens* doctrine."). Thus, the Court does not read the Fifth Circuit's opinion in *Schexnider* as operative in the § 1404(a) context, and Plaintiffs' suggestion that Defendant's Motion to Transfer should be evaluated using the traditional *forum non conveniens* rubric applied in that case is incorrect. [*See* Dkt. No. 7, ¶ 9].

That Plaintiffs' choice of forum in this case commands less deference than it might in another context is further reinforced by the view that in the § 1404(a) context, when the original forum "lacks any legally relevant factual nexus with [the] [p]laintiff or the claims, the plaintiff's choice of forum receives less deference." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005); *John Hanby & Hanby Envtl. Lab. Procedures v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001). *See also Rock Bit Int'l v. Smith Int'l*, 957 F. Supp. 843, 844 (D. Tex. 1997) ("[T]he usual deference accorded the plaintiff's choice of forum is of minimal value when none of the parties reside in this division of this District."); *Reed*, 995 F. Supp. at 714 ("[D]eference to plaintiff's choice of forum disappears when the

lawsuit has no connection . . . to the venue chosen."). The accident giving rise to this suit has no legal or factual nexus to the Laredo area.

Thus, although *some* deference is due Plaintiffs' choice of forum, the trend in the caselaw cuts against deferring to Plaintiffs' choice of forum to the extent Plaintiffs contend is required. Nevertheless, the Court applies the balance of the § 1404(a) analysis with a full cognizance that the movant bears the burden of demonstrating that transfer is warranted, and that Plaintiffs' choice of forum enjoys a practical authority as the default forum absent Defendant meeting its burden.

### C.  Private Factors

Whatever may be the precise quantum of deference Plaintiff's choice of forum commands in the § 1404(a) context, the Court concludes that Plaintiffs' prerogative in this case is trumped by the private and public factors, which collectively weigh in favor of transfer.

#### 1.  Relative Ease of Access to Proof Sources

There is no dispute that all of the events giving rise to this suit occurred in the Dallas area. In *Purdy v. Munden*, 356 F. Supp. 2d 658 (D. Tex. 2005), the Eastern District of Texas dealt with a set of facts strikingly similar to those presented here. The defendant sought transfer of a wrongful death suit, arising out of a traffic accident, from the Eastern District to the Northern District of Texas. *Id.* at 659. In specifically addressing this prong of the transfer analysis, the court noted that:

> [i]n negligence cases, the investigators and accident-scene witnesses likely to be called to testify at trial generally reside close to the scene of the accident. The evidence critical to establishing, and defending, negligence claims is generally found at or near the scene of the accident . . . . In a negligence case, as opposed to a products liability case, the importance of trying the case in the

district where the accident occurred generally outweighs deference to the Plaintiff's choice of forum.[1]

*Id.* at 660. Here, as was the case in *Purdy*, the scene of the accident, which will invariably become a primary focus of this litigation, is located within the Northern District of Texas. Likewise, although several of Plaintiffs' witnesses reside in Mexico, most of the law enforcement personnel who responded to, and investigated, the scene of the accident reside in or near the Northern District of Texas. [Dkt. No. 7, ¶ 18]. Thus, this factor weighs in favor of transfer.

### 2. Cost of Attendance for Willing Witnesses

The convenience of witnesses is often considered among the most important considerations in determining whether transfer is warranted. *See*, *e.g.*, *Speigelberg*, 402 F. Supp. 2d at 790 (citing *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998)); *Cambridge Filter Corp. v. International Filter Co.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982) ("A primary concern is the convenience of witnesses."). The convenience of *non-party* witnesses is of particular importance. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000); *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *DEV Indus., Inc. v. NPC, Inc.*, 763 F. Supp. 313, 315 (N.D. Ill. 1991); *Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.*, 657 F. Supp. 1257, 1259 (S.D.N.Y. 1987).

Defendant points to numerous non-party eyewitnesses who reside either within or very close to the Northern District, including the relevant law enforcement officers and emergency medical personnel. [Dkt. No. 7 at 8-13]. Plaintiffs counter by listing the names of three non-

---

[1] The *Purdy* court here was primarily addressing the practical benefits of trying such cases in the jurisdiction in which the injurious incident took place, and not necessarily the interest that local citizens have in adjudicating disputes that arise out of injurious conduct allegedly committed in their communities. This latter interest is a separate consideration in the analysis, and is discussed, *infra*.

party eyewitnesses, and numerous other witnesses, who live in Mexico, much closer to the Southern District than the Northern District. [Dkt. No. 10, ¶¶ 26-30]. However, most of Plaintiffs' identified witnesses are either parties to the suit, or their relevance to the suit is explained meagerly, at best. [*See*, *e.g.*, Dkt. No. 10, ¶ 37 (Plaintiffs merely stating that an identified witness, who may be a party as well, "has damage testimony about [Decedent.]")]. In this sense, Plaintiffs' list reflects an attempt to engage in the very "battle of the numbers" which they, a few pages later in their brief, recognize is not appropriate in the analysis. [Dkt. No. 10, ¶ 42]. *See also Empty Barge Lines II, Inc. v. Fisher*, 441 F. Supp. 2d 786, 793 (E.D. Tex. 2006) ("Courts have 'uniformly refused to let applications for transfer become a battle of numbers.'" (quoting *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001)).

Plaintiffs also repeatedly suggest that because one of their attorneys resides in Laredo, the convenience arising out of Laredo's proximity to Plaintiffs in Mexico is a factor to be considered in this analysis. [Dkt. No. 10, ¶¶ 30-33]. However, the Fifth Circuit has stated that "[t]he factor of location of counsel is irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

One thing is clear: no matter the venue, this litigation will entail much traveling, and inconvenience to *some* witnesses is seemingly unavoidable. However, Plaintiffs' list of witnesses, which they use to counter Defendants' list, is comprised mostly of witnesses that are not proper subjects of this prong of the analysis, or whose roles in this suit are questionable. Although it is true that the party moving for transfer bears the initial burden of demonstrating the propriety of transfer, the Court concludes that Defendant has met its burden, and Plaintiffs have failed to sufficiently counter Defendant's showing. Therefore, this factor weighs in favor of transfer.

### 3. The Availability of Compulsory Process to Secure Witnesses' Attendance

As demonstrated above, both parties are able to present lists of witness who reside much closer to their preferred forums. There is no reason for the Court to believe that any forum will enjoy the power of compulsory process more than the other. As one court has noted:

> Federal Rule of Civil Procedure 45 (entitled "Subpoena") underwent a complete revision in 1991. In commenting on this revision, the Advisory Committee noted that one of the purposes of this revision was to "enable the court to compel a witness found within the state in which the court sits to attend trial." *See* Notes of Advisory Committee on Civil Rules, 1991 Amendments, 134 F.R.D. 525, 576, 582, 672; O'CONNOR'S FEDERAL RULES, 142, 975-76 ("Do not make the mistake of arguing that a witness who is outside the district and not within 100 miles of the courthouse cannot be compelled to attend trial when that witness is present in the state in which the court sits."); *Yun Ja Chung v. Chrysler*, 903 F. Supp. 160, 165 (D. D.C.1995).

*Mohamed*, 90 F. Supp. 2d at 778.[2] Thus, both courts enjoy equal power to compel all of the individuals involved in this litigation to appear before it. As to witnesses who reside outside of Texas, such as Plaintiffs' eyewitnesses in Mexico, or Defendant's employee, who resides in Nevada, [Dkt. No. 7 at 13], neither district court has more power than the other to compel appearance. Thus, this factor is neutral as to transfer.

### 4. Other Practical Considerations

Defendant points to no additional factors tending to show that adjudication of this matter in the Northern District would be more convenient for the individual participants in this litigation in some sense not addressed by the above analysis. [*See* Dkt. No. 7, ¶¶ 32-33]. Plaintiffs, however, provide evidence that if this case is litigated in the Southern District it, in all likelihood, will reach trail about six months sooner than it would in the Northern District.

---

[2] Incidentally, Plaintiffs might find it helpful to observe how this Court gives full credit here to Judge Heartfield for this helpful and well written analysis. This blocked passage has apparently fallen victim to the "copy and paste" technique that has unfortunately become all too common in this age of word processors, as Plaintiffs in their brief, perhaps inadvertently, have repeated this passage in full as if it were their own. "While our legal system stands upon the building blocks of precedent, necessitating some amount of quotation or paraphrasing, citation to authority is absolutely required when language is borrowed." *United States v. Bowen*, 2006 U.S. App. LEXIS 23161 at 24 n.3 (6th Cir. 2006).

[Dkt. No. 10, ¶ 58]. The Judicial Caseload Profile, included as Exhibit Five to Plaintiffs' Response, does corroborate this claim. [Dkt. No. 10-6, Ex. 5]. Therefore, this factor weighs against transfer.

### D. Public Factors

#### 1. Administrative Difficulties Flowing From Court Congestion

The first "public" consideration is "the possibility or likelihood of any administrative difficulties flowing from Court congestion." *In re Volkswagon*, 371 F.3d at 203. Defendant argues that this prong weighs in favor of transfer because of the Laredo Division's "voluminous criminal docket." [Dkt. No. 7, ¶ 35]. However, as stated above, although the Laredo Division of the Southern District is known for having an unusually heavy criminal caseload, the Court disposes of civil cases more quickly than does the Northern District. [*See* Dkt. No. 10, Ex. 5]. Therefore, there is no basis on which to conclude that this Court's "voluminous criminal docket" renders it more prone to congestion than the Northern District—in fact, the opposite seems to be the case. Thus, this factor weighs against transfer.

#### 2. Local Interests of the Northern District of Texas

The localized interests of an accident situs have always weighed heavily in the transfer analysis, as localities are said to have a strong interest in adjudicating claims that arise out of allegedly wrongful behavior occurring in their respective communities. *See*, *e.g.*, *In re Volkswagen AG*, 371 at 206 (Stating that the "'local interest in having localized interests decided at home'" weighs "heavily" in favor of transfer (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. at 241 n.6)); *Spiegelberg*, 402 F. Supp. 2d at 792. Additionally, as the Supreme Court has noted, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

508-08 (1947). This localized interest is particularly strong in cases such as the one at bar, which alleges a violation of public duties, thereby implicating local public safety. *See Purdy*, 356 F. Supp. 2d at 660 ("Residents of the Northern District of Texas have a local interest in adjudicating disputes arising from an accident that occurred on the freeways in their district.").

The accident giving rise to this suit occurred in the Northern District of Texas. [Dkt. No. 7, ¶ 6]. The residents of that District have an interest is adjudicating matters of local conduct. Thus, this factor weights quite heavily in favor of transfer.

### 3.  Familiarity of Forum with Governing Substantive Law

Besides the violation of duties imposed by common law, Plaintiffs also claim negligence *per se*, in that Defendant allegedly violated state and federal statutes governing the operation of motor vehicles on public highways. [Dkt. No. 1 at 5]. Since both districts are equally competent to interpret and apply such laws, this factor is neutral.

### 4.  Avoidance of Unnecessary Problems of Conflict of Laws

Since Defendant seeks transfer within Texas, there are no foreseeable conflicts of law. Therefore, this factor is neutral as to transfer.

### III.   CONCLUSION

Although Plaintiffs' choice of venue should not be disturbed lightly, it may be disturbed nonetheless when the above considerations, taken in sum, yield the conclusion that "in the interest of justice," and for the sake of "convenience to the parties," the suit should be transferred. Such is the case here. Although part of the above analysis weighs against transfer, the most salient considerations counsel otherwise. The fact that this suit has no factual

connection to the Southern District of Texas is particularly conspicuous. This, combined with the Court's healthy reluctance to deny the Northern District the opportunity to adjudicate a dispute that implicates the interests of that community more than any other, compels the conclusion that transfer is warranted.

The Court concludes that the proper venue for this suit is the Northern District of Texas. Defendant's Motion to Transfer is **GRANTED**.

IT IS SO ORDERED.

Done this 26th day of October, 2006, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**